Opinion of the Court, by
Judge Mills.
THIS is a notice and motion to quash the sale of lands by execution, and it was overruled. The grounds set out in the notice are numerous, as well as those attempted in the proof; but, so far as fraud or address on the part of the purchaser are relied on, the proof failed, and we deem it unnecessary to detail any of the circumstances or grounds, except one.
The plaintiff in the motion, who was defendant in the execution, resided, before and ever since the date of the judgment, in‘Nelson county, where the judgment was rendered, and the first execution issued thereof, was directed to the county of Breckinridge, and- by virtue of this execution the sale in question was made;' and it is contended, on the authority of the case of Mason vs. Rogers,l&c. at the last term of this court, that the sale ought to have been quashed-. We sajq the sale; for there is no attempt on the part of the mover, to quash the execution. There was no proof, whether the.defendant in the execution, now plaintiff in the motion, had or had not removed his effects from the county, and the purchaser of the land zyas. no party, but á, stranger to the execution.
(1) Assuming the case of Mason and Rogers ns fixing-the construction of the statute relative to the transmission of an execution beyond the territorial limits of a county, this case presents the inquiry, whether executions sent to other counties, ape void or voidable only. If void, there is no doubt this sale Gannot stand;- if void-.. able only, it will not follow that the sale is bad, because the execution is erroneous.
We view the distinction taken in the books between a legal proceeding irregular, and that which is erroneous merely, as sound, and one which, for the peace of ■society and the security of rights acquired by legal proceedings, ought to be adhered to; for, according to that distinction, any rights acquired by third persons under a proceeding erroneous merely, are, in general, to be protected, notwithstanding the proceedings may afterwards-be reversed for error. Hence it has been often held, that after a judgment was reversed for er- *95 •for only, the party obtaining the reversal is not entitled' to restitution in kind, of what has been taken and sold to satisfy the judgment, but only to the money made and paid to his adversary.
(2) It is a general ru^e.» a^oflTcefcaa justify under »n execution-, the titieTo a chattel in-terest, by a to^nss^ the title to* lands, there F??®4 ^e a 1 ®mun '
(3) cases cited in jhave heen held valid, not-1 yvithsta-nding-^ect and plaintiff.
This principle, we conceive, ought to apply to, and govern executions which are only erroneous. The purchaser of an estate under them, ought not to have his title impeached, because of the error. The only points to which he is to look, are, whether there is a proper authority to make the sale, and a proper officer engaged in making it.
(2) It is also, in the general, true, that wheresoever an officer can justify under a writ, he can pass a title by a sale under it. If, to him, it is a good authority to act, the purchaser claiming under him will acquire a good title. Whether this maybe true, to its whole extent, with regard to the sale of land by fieri facias, we need not now determine. One thing is, however, clear on this point. When lands were made liable, they were subjected to .judgments; and hence it has been held, thatapurchaser claiming lands under execution, must not only produce an execution, but a judgment, If, in any case, then, a purchaser could acquire title to a chattel, by virtue of an execution, valid on its face, but issued without a judgment, or on an invalid one, it is not necessary for us to. say now, that he could, by such an execution, acquire a title to lands, when the act requires a judgment, and in this case there is a valid judgment. _
(3) It has, moreover, been held, that the purchaser was not bound by irregular acts in the officer or plaintiff, in which he did not participate. These principles have been adopted by this court, in the following cases: M'Kinney vs. Scott, 1 Bibb 155; Reardon vs. Searcy's heirs, 2 Bibb 202; Coleman vs. Trabue, &c. ibid 518; Lawrence vs. Speed, ibid 401; Haydon vs. Dunlap, 3 Bibb 216.
These cases go far, in principle, to support the sale in question. In some of these cases, a distinction, which we still approve, is taken between those cases where the statute has pronounced the sale void, and those where the directory part of the statute has not been pursued; and in the latter case, the sale, who« made to a person innocent of the deviation from the *96 statute, is held good. Such is the present case. The statute has not pronounced it void.
[4] There being oases in which an execution may go out of the county where the judgment was rendered, When a sheriff receives an execution from another county, it is not his duty’ to enquire whether the case existed which authorized it to issue or not; but he is to presume it regular and proceed to execute it.
sKves^vxif fjministra-. tor, though Wadcfi~11ood asV'the purchaser — Arg.
quashing an execution er-roneonsly is-the? county; .will net invalidate a sale of land made under it.
(4) It is clear,'that according to the construction given in Mason vs. Rogers, an execution may go out of the county, in cases where the defendant in the execution has moved himself or effects from the county. What, then, is the duty of the officer to do, when he receives such execution, coming from another’ county t He may be bound to know many facts in pais, officially, within his own bailiwick’; but in others he is bound to know nothing. The execution may have come from one extreme of the State to another. Is he bound to retrace it to the county from whence it came, and there ascertain where the defendant resided, and whether he had removed himself or his effects? When he got there, the means of ascertaining these facts in pais, might not be in his power; and yet, if he does not proceed, and these facts exists, he would become liable to the plaintiff.
The same inconveniences would be imposed‘on every purchaser. By this means all sales of property on executions out of the county, would become so hazardous, that no fair price could be obtained, and the allowance granted, to send them out of the county, would be rendered of no use to the creditor, or highly injurious to the debtor.
As an execution can go beyond the county, in some cases, we conceive that the correct doctrine is, the sheriff and all purchasers have a right to presume that it is legally sent, and to act accordingly; and that if it shall thereafter be found that it was sent improperly, the title sold under it ought not to be disturbed.
(5) On analogous principles, the sale of a slave by an administrator, who has only a limited and special Povvei’ to sell, has been held good as to the purchaser, notwithstanding the sale was wrongfully made, and the heir or distributee has been.left to his remedy against the administrator. Stamps vs. Beatty, Hard. 337. So, in this case, if an execution is wrongfully sent, the de-fendaut who is injured thereby may have his redress aga¡nst the plaintitF, instead of taking it against either the sheriff or purchaser.
(6) If it is necessary, to give such redress, that ifie-execution should be quashed, (a point not now beforo us,} it will not follow, that the tille of the purchaser should fall with it.,
Hoggin and Huston, for plaintiff; B. Hardin, for defendant.
Upon the whole, we conceive that for this canse on* ly, the title of the purchaser in this case ought not to be shaken, and the-judgment of the court below must be affirmed with costs.